# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JERRY D. ASHBURN,<br><br>    Plaintiff,<br><br>vs.<br><br>BETH SKINNER, et al.,<br><br>    Defendants. | No. C25-3014-LTS-KEM<br><br>**MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS AND MOTION TO STRIKE** |

## I. INTRODUCTION

This case is before me on two motions (Docs. 14, 29) to dismiss and a motion to strike (Doc. 35). Defendants Beth Skinner, Don Harris, Michael Boatman and Jacy Barker (collectively, the FDCF employees)[1] filed a motion (Doc. 14) to dismiss Counts 7 and 8 of plaintiff Jerry Ashburn's 12-count complaint, arguing that the court lacks subject-matter jurisdiction over those claims and that they fail to state claims upon which relief can be granted. Ashburn has filed a resistance (Doc. 15) and the FDCF employees have replied (Doc. 17).

Defendants Frederick Hutson and Alfonzo Brooks (collectively, the Pigeonly executives) filed a motion (Doc. 29) to dismiss for lack of personal jurisdiction. Ashburn has a resistance (Doc. 33) and the Pigeonly executives have replied (Doc. 34). The reply includes an exhibit (Doc. 34-1), which Ashburn has moved (Doc. 35) to strike. The Pigeonly executives have filed a resistance (Doc. 36) to the motion to strike. Oral argument is not necessary as to any of these motions. LR 7(c).

---

[1] Skinner is actually employed by the Iowa Department of Corrections (IDOC), not the Fort Dodge Correctional Facility (FDCF). Doc. 27 at ¶ 7. However, for the sake of simplicity, I will include her with the FDCF employees.

## II. BACKGROUND

Jerry Ashburn is incarcerated at the Fort Dodge Correctional Facility (FDCF) in Fort Dodge, Iowa. Doc. 27 at ¶¶ 5, 11. He is one of the estimated 1,300 inmates at the medium-security facility operated by the Iowa Department of Corrections (IDOC). *Id.* at ¶¶18–19. He challenges FDCF's mailing policy and its practice of censoring television programming. Only the mailing policy is relevant to the current motions.

### A. *Mailing Policy and Practices*

IDOC recognizes the benefits of correspondence between the incarcerated and outside world. Iowa Dep't of Corr. Pol'y & Procs. OP-MTV-01 [hereinafter OP-MTV-01], https://doc.iowa.gov/media/1028/download?inline [https://perma.cc/2KJF-FUGA]; *see also* Doc. 27 at ¶ 21. To facilitate the timely delivery of such correspondence, IDOC has adopted the following policy:

> With the exception of weekends and holidays, incoming and outgoing letters are held for no more than 24 hours and packages are held for no more than 48 hours prior to distribution. Correspondence requiring further security review or translation per the provisions of this policy may be held for up to five days prior to a decision regarding distribution. Additional time for review may be approved by the Warden. In such cases, the incarcerated individual shall be notified in writing.

Doc. 27 at ¶ 44 (quoting OP-MTV-01). Other standards are set out for evaluating and rejecting mail based on its contents. *Id.* at ¶ 45. The IDOC website further details the types of permissive non-legal mail that it will process, such as letters or 4x6 photos (of 10 pictures or less). *Id.* at ¶¶ 25–26, 43.

"To curb the introduction of mail contraband," IDOC uses a centralized mail processing facility. *Id.* at ¶ 42 (quoting Iowa Dep't of Corr., *How Do I Write an Offender?*, https://doc.iowa.gov/inmate-family-services/how-do-i-write-offender [https://perma.cc/CSW5-TYJR]). Currently, that processing facility is operated by

2

Pigeonly Inc. (Pigeonly) in Las Vegas, Nevada, with which IDOC contracts with to review incoming mail for its state correctional facilities. *Id.* Pigeonly opens all non-legal mail, scans it and delivers a digital copy to the intended recipient. *Id.* at ¶¶ 28, 42. Pigeonly then destroys the original without offering either the sender or recipient the chance to see it returned. *Id.* at ¶¶ 27, 41–42.

Ashburn complains that many mailings are withheld, discarded or otherwise intercepted before reaching him. *Id.* at ¶¶ 27, 39. When mail is rejected, Ashburn claims it is done without notice and the chance for him to object or pay for its return to sender. *Id.* at ¶¶ 27, 47. When mail is cleared for delivery, its digital copy is usually delayed beyond the timelines set by IDOC policy, "often ranging between three (3) and nine (9) weeks after [the mail] was sent." *Id.* at ¶ 29.

When confronted about the issues that inmates like Ashburn face with mail, Pigeonly passed off the fault to FDCF. *Id.* at ¶ 30. Ashburn thus filed a grievance with FDCF detailing the delays and non-deliveries of his mail. *Id.* at ¶ 31. FDCF Executive Officer Jacy Barker acknowledged the grievance but responded that FDCF could not change a state-wide IDOC contract. *Id.* at ¶ 32. Ashburn appealed to Deputy Warden Michael Boatman but was met with a similar answer. *Id.* at ¶ 33. His final appeal was similarly denied. *Id.* at ¶ 36.

Ashburn argues that the delivery delays and the destruction of mail without notice support eight claims for relief. *Id.* at ¶¶ 78–117. Relevant to the FDCF employees' motion to dismiss are two state common-law individual-capacity claims for conversion and the breach of the duty of care in handling or delivering the mail. *Id.* at ¶¶ 109–17. The FDCF employees argue that Ashburn is required to exhaust his administrative remedies with the Iowa Department of Management before asserting those claims in a judicial action. Doc. 14.

## B. *Pigeonly Leadership*[2]

Frederick Hutson and Alfonzo Brooks are Pigeonly's co-founders and executives. Doc. 27 at ¶¶ 8, 14. They designed and oversee the system curating FDCF inmate correspondence. *Id.* They also steered Pigeonly's operations to Iowa and its contract with IDOC. *Id.* at ¶ 8.

Despite the company's contacts and contracts with Iowa, the Pigeonly executives describe their personal connections to the state as practically nonexistent. Doc. 29 at 1–2. Both submitted similar declarations stating they are residents of and domiciled in other states. Doc. 29-2 at ¶¶ 2–3 (Hutson claiming Nevada); Doc. 29-3 at ¶¶ 2–3 (Brooks claiming Florida). Neither owns property in Iowa, pays Iowa state taxes or contracts with Iowans in their private capacities. Docs. 29-2 & 29-3 at ¶ 5. Nor have they "spent any personal time in the State of Iowa," denying even traveling through the state. *Id.* at ¶ 4. Further, they state that any involvement they had in procuring and executing Pigeonly's contract with IDOC occurred in their roles as officers of the company. *Id.* at ¶ 6.

Based on these purported, limited contacts with Iowa, the Pigeonly executives argue that this court does not have personal jurisdiction over them. *See generally* Doc. 29-1. Ashburn argues, however, that the Pigeonly executives have availed themselves of Iowa courts, based in part on having "personally negotiated, executed, and profited from a contract with [IDOC]," "repeatedly communicated with Iowa officials" and "overs[een] the mail and communication-access systems functioning inside Iowa's correctional institutions." Doc. 33 at 11.

The Pigeonly executives respond that such allegations fall short of the sufficient minimum contacts to impose personal jurisdiction over them, while also clarifying that

---

[2] The Pigeonly executives' purported contacts with Iowa draw from affidavits and exhibits bearing on contacts with Iowa. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).

4

they never "executed" the contract. Doc. 34. In support, they attached the contract as an exhibit to their reply, showing that it was executed by a different Pigeonly officer. Doc. 34-1 at 2. As noted above, Ashburn has moved to strike the exhibit as untimely. The Pigeonly executives argue that striking the exhibit would be drastic and that its relevance arose only after Ashburn addressed the execution of the contract in his resistance.

## III. ANALYSIS

### A. *The FDCF Employees' Motion*

The FDCF employees' motion to dismiss pertains to Ashburn's claims of a breach of a duty of care and conversion, which are state common-law tort claims brought against the defendants in their individual capacities. Doc. 27 at 20–21.[3]

#### 1. *Applicable Standards*

The FDCF employees argue that the court does not have subject-matter jurisdiction over the conversion and breach of a duty of care claims and that those claims fail to state a claim upon which relief can be granted. Doc. 14.

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, it is important to distinguish between "facial" and "factual" attacks. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). A facial attack presumes all allegations concerning jurisdiction are true and asks only if the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. *Titus v. Sullivan*,

---

[3] As an initial matter, the FDCF employees based their motion to dismiss on an amended complaint (Doc. 10) that was later amended again (Doc. 27). Typically, an amendment to a complaint moots any pending motion to dismiss. *Pure Country, Inc. v. Sigma Chi Frat.*, 312 F.3d 952, 956 (8th Cir. 2002). Here, however, Ashburn's second amended complaint only adds background information clarifying the relief sought after a defendant declared bankruptcy and did not alter any allegations bearing on what the FDCF employees raised in their motion to dismiss. *See* Doc. 19. As such, the motion is not moot despite pre-dating an amendment.

5

4 F.3d 590, 593 (8th Cir. 1993). The court's review is accordingly limited to the face of the pleadings, and the non-moving party "receives the same protections as it would defending against" a Rule 12(b)(6) motion. *Branson Label*, 793 F.3d at 914.

A factual attack, on the other hand, challenges the veracity of a plaintiff's pleadings. *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). As such, the court must go beyond the pleadings to consider evidence such as testimony and affidavits. *Branson Label*, 793 F.3d at 915. There is no presumption of truthfulness that attaches to the plaintiff's allegations, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Under either a facial or factual challenge, the party seeking to establish subject-matter jurisdiction has the burden of proving it. *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Conversely, a Rule 12(b)(6) motion to dismiss assesses whether a plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance for deciding whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer

6

> possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (second alteration in original) (citations omitted).

"Plausibility" is assessed by the court by "draw[ing] on [their own] judicial experience and common sense," *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (first alteration in original) (quoting *Iqbal*, 556 U.S. at 679), and is reviewed "as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010). "The well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Topichian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Parkhill v. Minn. Mut. Life Ins.*, 286 F.3d 1051, 1057–58 (8th Cir. 2002)). Still, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Couzen v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (affirming dismissal of claim that had no legal basis of support).

### 2. Discussion

The FDCF employees raise both a facial and factual challenge to subject-matter jurisdiction, each predicated on the State's sovereign and Eleventh Amendment immunities and revolving around the application of the Iowa Tort Claims Act (ITCA). Doc. 14-1 at 5. Iowa, as a sovereign, cannot be sued without its express consent. *See Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019). The Eleventh Amendment is a constitutionalized subset of such immunity, prohibiting suits brought specifically in federal court against a state without first having its consent. *Harmon v. Preferred Fam. Healthcare, Inc.*, 125 F.4th 874, 882 (8th Cir. 2025). Properly raised, a state's immunity

7

deprives a court of its subject-matter jurisdiction. *See United States v. Metro. St. Louis Sewer Dist.*, 578 F.3d 722, 724 (8th Cir. 2009).

The ITCA is Iowa's consent to some suits, substantively making the state liable for certain tort claims as if it were any other defendant. Iowa Code § 669.4(2). The statute covers claims against the state itself, as well as suits against its employees who were "acting within the scope of" their office. § 669.2(3). Before a plaintiff may make use of Iowa's consent though, he or she must first file the claim with the Iowa Department of Management for review. *Id.* This administrative step gives the state time to process, investigate and settle claims against it before adversarial proceedings commence, including whether employees had been acting within the scope of their offices so as to be deserving of the state's representation in their defense. §§ 669.3, 669.21. Upon a finding that an employee acted within the scope of the employee's office, Iowa will substitute itself as the defendant in place of the employee. § 669.5(2).

Exhausting one's claims with the state agency is a jurisdictional prerequisite to suing the state. *Swanger v. State*, 445 N.W.2d 344, 347 (Iowa 1989). Further, the ITCA contemplates that suits asserting common-law claims will be brought in state court and does not extend such consent to suits in federal court. *Jacobsen v. Dep't of Transp.*, 332 F. Supp. 2d 1217, 1230 (N.D. Iowa 2004); *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (a state may consent to being sued in its courts without also waiving its Eleventh Amendment immunity to be sued in federal court).

From those principles, the FDCF employees argue that Ashburn's breach of a duty of care and conversion claims must be dismissed because (1) facially, Ashburn was required to, but did not, plead his compliance with the ITCA's exhaustion requirements; (2) factually, an affidavit from the Iowa Department of Management confirms that Ashburn has not exhausted such claims; and (3) the Eleventh Amendment bars the claims from being brought in federal court. *See* Docs. 14-1, 14-2.

Arguments as to the Eleventh Amendment, and Iowa's sovereign immunity more generally, can be quickly dismissed because they do not apply to Ashburn's claims.

8

Those claims are brought against the FDCF employees in their individual capacities and thus do not implicate the state at all. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued in their personal capacity come to court as individuals."). Consequently, the state's immunity does not extend to them. *Id.* at 30–31. Nor do the lack of factual allegations suggesting that the FDCF employees acted outside the scope of their employment change the answer as it relates to the state's immunity. *Cf. Lewis v. Clarke*, 581 U.S. 155, 163–64 (declaring someone "immune from suit solely because he was acting within the scope of his employment" would extend sovereign immunity principles beyond what is recognized for state employees). Likewise, Iowa's agreement to indemnify employees does not "extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id.* at 165–66.

As to the ITCA and its exhaustion requirement, the FDCF employees argue that Counts 7 and 8 are predicated on actions they undertook as state employees. Doc. 17 at 3. Such claims, even if brought against them in their individual capacities, fall under the ITCA. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 141 (Iowa 2013); *Brumage v. Woodsmall*, 444 N.W.2d 68 (Iowa 1989). Because Ashburn has not administratively exhausted his claims, the FDCF employees argue they must be dismissed.

Ashburn counters that the two counts are meant to be alternatively pleaded claims, properly understood as alleging acts the FDCF employees took outside the scope of their employment. Doc. 15 at 2. He concedes that the claims are based on actions the FDCF employees performed during work hours and that their positions are what enabled them to commit the alleged harms. However, he argues that "the unexplained disappearance, delay, or mishandling of [Ashburn]'s mail" could be the product of "potentially unauthorized, malicious, or retaliatory handling of [Ashburn]'s mail and property." *Id.* If Ashburn is correct, then those actions were beyond the scope of the defendants' employment. *Godar v. Edwards*, 588 N.W.2d 701, 706 (Iowa 1999) (conduct is taken outside the scope of employment when it deviates so substantially in nature from the employer's business or interest). Because the ITCA protects state employees only when

9

they were acting within the scope of their office, a fact-bound issue, Ashburn contends that his claims must continue until a fact-finder determines that the FDCF employees were acting within the scope of their employment. *Godfrey v. State*, 847 N.W.2d 578, 586 (Iowa 2014).[4]

While malfeasance can place conduct beyond the scope of one's employment, Ashburn's argument fails because he has not plausibly attributed the FDCF employees' conduct to animus or other improvident acts that would forsake their job duties. As noted above, Ashburn must plead facts sufficient to state plausible claims, not merely conceivable claims. His complaint, as amended, expressly challenges conduct taken within the scope of the FDCF employees' job duties. *See, e.g.*, Doc. 27 at ¶ 12 ("The [FDCF employees] . . . at all relevant times, were employed in supervisory or administrative roles at Fort Dodge Correctional Facility . . . . Each Defendant had personal involvement, exhibited a deliberate indifference, and/or had supervisory knowledge of (but failed to act) . . . when they exercised authority over institutional policies including but not limited to governing communication [and] mail access . . . ."). Whatever conclusory statements of bad-faith or personal animus that Ashburn sprinkles in cannot transform such conduct into actions undertaken outside the scope of employment. *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991); *accord Wagner v. Iowa*, No. 19-cv-3007, 2019 WL 13551548, at *8 (N.D. Iowa July 29, 2019). Entirely missing from the complaint are allegations suggesting that malfeasance contributed to the delays or non-deliveries of Ashburn's mail. Consequently, the ITCA applies to Counts 7 and 8 and, because Ashburn failed to exhaust his administrative remedies, those claims must be dismissed.

---

[4] A later ruling in *Godfrey* recognized a standalone cause of action for violations of the Iowa Constitution, which has since been overruled. *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), *overruled by*, *Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023). As *Burnett* does not purport to overrule the holding of *Godfrey* that Ashburn relies on, I consider that holding as good law.

## B.     *Pigeonly Executives' Motion to Dismiss and Ashburn's Motion to Strike*

The Pigeonly executives assert that this court lacks personal jurisdiction over them.  Doc. 29.  Among other things, they deny that they signed a contract with IDOC on behalf of Pigeonly, an issue that is subject to Ashburn's motion (Doc. 35) to strike.

### 1.     *Applicable Standard*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  Courts have broad discretion to decide the procedure for resolving a Rule 12(b)(2) motion so long as both sides have had a fair opportunity to present their facts and arguments.  *Hawkeye Gold, LLC v. China Nat'l Mats. Indus. Imp. & Exp. Co.*, 89 F.4th 1023, 1031 (8th Cir. 2023) (citing *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016)).  It is the plaintiff that bears the burden of making a prima facie showing that the court has personal jurisdiction over each defendant.  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *see also Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022) ("The evidentiary showing required at the prima facie stage is minimal."). When the court relies on pleadings and affidavits as opposed to deciding the issue with a hearing, all evidence must be viewed in a light most favorable to the plaintiff while also resolving all conflicts in their favor.  *Fastpath*, 760 F.3d at 820.

The parties agree that the existence of personal jurisdiction over the Pigeonly executives turns on contacts that they "purposefully directed toward the forum State." Doc. 29-1 at 4; Doc. 33 at 6 (quoting *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987).  The Eighth Circuit uses a five-factor test to determine whether a defendant's contacts with the forum are sufficient to establish personal jurisdiction: (1) the nature and quality of the contacts; (2) the quantity of those contacts; (3) the relationship of those contacts to the cause of action; (4) the forum state's interest in providing a forum to its residents; and (5) the convenience to the parties.  *Myers v. Casino Queens, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012).  The first three of those factors are the

11

most important. *Id.*[5] Ultimately, the defendants' contacts must be sufficient to comport with due process such that the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *accord Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 981–82 (8th Cir. 2015).[6]

### 2. *Discussion*

Because Ashburn relies, in part, on the assumption that the Pigeonly executives executed the company's contract with IDOC, I will begin by addressing his motion to strike. Ashburn contends that Exhibit A (Doc. 34-1), the finalized contract between Pigeonly and IDOC, must be stricken because it was not submitted until the Pigeonly executives filed a reply in support of their motion to dismiss.[7]

---

[5] The third factor distinguishes between specific and general personal jurisdiction, it being relevant for specific personal jurisdiction. *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1102. The difference is

> Specific jurisdiction refers to jurisdiction over causes of action arising from or relating to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.

*Id.* at 1103. I analyze the third factor because both parties base their arguments on whether specific jurisdiction exists. *See* Doc. 29-1 at 7; Doc. 33 at 11.

[6] Personal jurisdiction depends on the long-arm statute of the forum state and the federal due process clause. *Bros. & Sisters in Christ*, 42 F.4th at 951. Because Iowa's long-arm statute permits the exercise of personal jurisdiction to its furthest extent possible under the due process clause, it collapses the two questions. *Creative Calling*, 799 F.3d at 979.

[7] Ashburn styles his motion as a Rule 12(f) motion. *See* Doc. 35 at 1. By its terms however, Rule 12(f) is limited to striking materials from pleadings and a reply brief is not a pleading. *Adams v. City of Cedar Rapids*, No. 21-cv-53, 2022 WL 16572036, at *16 (N.D. Iowa Oct. 19, 2022); *see also* Fed. R. Civ. P. 7(a) (listing what constitutes a pleading). I will base my review of the motion to strike on the court's inherent authority to control its docket. *See Buergofol GmbH v. Omega Liner Co.*, No. 22-cv-4112, 2024 WL 3521802, at *2 (D.S.D. July 24, 2024). A court's power to strike materials must be exercised with restraint and use of the power is disfavored. *Id.*

12

In some instances, attaching exhibits to a reply brief can pose a fairness problem. *See, e.g.*, *Barnes v. Oldner*, 259 F. Supp. 3d 926, 931 (E.D. Ark. 2017). Here, however, I find that striking the exhibit is not warranted. Ashburn has argued that the court's personal jurisdiction over the Pigeonly executives arose from their efforts to procure a contract with IDOC and how their setting policies and operating Pigeonly led to Ashburn's injuries. Doc. 10 at ¶¶ 8, 14, 40. The Pigeonly executives' motion to dismiss then focused on their lack of personal connections to Iowa and how their conduct, as taken through Pigeonly, did not personally avail themselves to this forum. *See generally* Doc. 29-1. In resistance, Ashburn argued that the Pigeonly executives "designed, implemented, and oversaw the mail and communication-access systems functioning inside Iowa's correctional institutes, dictating how Iowa inmates could send and receive information." Doc. 33 at 11. Ashburn also asserted, twice, that the Pigeonly executives "executed" the contract with IDOC. *Id.* at 11–12.

In reply, the Pigeonly executives corrected this assertion, pointing out that they had not been the ones to physically execute the contract. Doc. 34. Because Ashburn first raised the issue of who executed the contract in his resistance to the motion to dismiss, the Pigeonly executives attached the finalized contract to show that Ashburn's belief was mistaken. Doc. 34-1. Even then, the Pigeonly executives characterized the clarification as "a distinction without a difference," and returned to arguing the lack of their individual contacts with Iowa. Doc. 34 at 2.

Given this context, I will not strike the exhibit. The Pigeonly executives did not submit the contract to stake out a new argument as to why personal jurisdiction is wanting, but only to clarify a misperception first brought up in Ashburn's resistance. *See* LR 7(g) (reply briefs are meant "to respond to new and unanticipated arguments made in the resistance"). Moreover, whether the Pigeonly executives signed the contract on behalf of Pigeonly bears little weight on the issue of whether they are subject to this court's personal jurisdiction. Ashburn's motion to strike is therefore denied.

13

Turning then to whether there is personal jurisdiction over the Pigeonly executives, the fact that they have never entered the State of Iowa is not itself sufficient to defeat jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor can the Pigeonly executives rest on their purported contacts with the state arising solely from their positions in the company. After all, a corporate agent may still avail itself of the jurisdiction of a forum based on conduct he or she took in their corporate capacity. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Still, the fact no party is challenging the court's jurisdiction over Pigeonly does not establish jurisdiction-by-association over the Pigeonly executives. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). It is the totality of the Pigeonly executives' acts that must be assessed—through the five factors in *Myers*— to determine whether they purposefully availed themselves of this forum such that they should reasonably anticipate being haled into court here. *Westlake Invs., LLC v. MLP Mgmt. LLC*, 707 F. Supp. 2d 904, 914 (S.D. Iowa 2010).

At this stage, I accept as true Ashburn's relevant allegations. Thus, I will assume that the Pigeonly executives "designed and enforce[] the facility's communication-access policies governing how incarcerated persons . . . may correspond with the outside world." Doc. 27 at ¶ 14. I will also assume that those policies caused the injuries that Ashburn alleges in this lawsuit and that the Pigeonly executives participated in procuring Pigeonly's contract with IDOC, profiting from it. Doc. 33 at 11. The question is whether those contacts, all funneled through the corporation, form a basis for the court to exercise personal jurisdiction over the Pigeonly executives.

The Pigeonly executives contend the answer is no, arguing that their activities cannot be their own when undertaken in their corporate capacities. They rely on *Westlake*, which they characterize as a case finding a lack of personal jurisdiction over a non-resident despite the non-resident being "the sole member of a corporate defendant— who 'likely conducted most if not all of the business of the company.'" Doc. 34 at 3 (quoting *Westlake*, 707 F. Supp. 2d at 914)). That recitation, however, inflates the non-resident's role. The case had many defendants and centered around the sale of a

14

property upon which the plaintiff expected the defendants to construct apartments, which did not happen. *Westlake*, 707 F. Supp. 2d at 909. One defendant was CCC/MLP Westlake LLC, a signatory of the purchase agreement. *Id*. at 913. Crown Capitol LLC was one of CCC/MLP Westlake's members of which another defendant, the non-resident, was the sole member of. *Id*. Though CCC/MLP Westlake and the non-resident were both defendants, Crown Capitol was not, meaning that the Pigeonly executives are incorrect in referring to the non-resident "the sole member of a corporate defendant."

That distinction matters. Instead of the non-resident being the person who "conducted most if not all of" the underlying business for the corporation, he was the sole member of an LLC that was, in turn, one of the members of another LLC that was a defendant. To attenuate the non-resident's contacts further, plaintiff's counsel "curiously" admitted that the non-resident's only involvement in the case was as an investor. *Id*. at 914. This means that instead of the non-resident being directly involved in all the activities of the corporate-defendant, he was two layers removed from any contacts with the state, at best having invested in an LLC that chose to do business in Iowa. On those facts, the non-resident had not purposely availed himself to the personal jurisdiction of Iowa courts.

The facts in this case are different. Ashburn alleges that the Pigeonly executives directed the policies and practices that he complains of regarding the destruction and delayed delivery of his mail. Ashburn alleges that they personally designed and implemented those policies and continue to manage them. There is no dispute that the policies have been directed toward Iowa and its prisoners, such as Ashburn. The executives further directed the company's business towards Iowa and profited from that decision.

These allegations are much closer to those in *State ex rel. Miller v. Grodzinsky*, 571 N.W.2d 1 (Iowa 1997), in which the Iowa Supreme Court upheld the exercise of personal jurisdiction over the corporate-employee defendants. *Id*. at 6. Among the allegations in *Grodzinsky* was that the corporate officers had been responsible for the

15

"design, layout and writing of" allegedly fraudulent contest materials that were sent into Iowa, that the corporate officers "manage[d], control[led] and direct[ed] all business policies" of those corporations who ultimately sent the contest materials, and had "formulated, controlled, participated in or assisted in the implementation of the business practices" forming the basis of the lawsuit. *Id*.

"[W]hen commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King*, 471 U.S. at 479 n.22 (cleaned up). Based on Ashburn's allegations, that is the case here. Ashburn supports his assertion of personal jurisdiction over the Pigeonly executives beyond a mere, barebones reference to their association with Pigeonly. *Cf. Ferman v. Jenlis, Inc.*, 224 F. Supp. 3d 791, 799 (S.D. Iowa 2016). He alleges that they are principal actors with a definable role in the design, implementation, and oversight of policies directed at Iowa. He further contends that they steered Pigeonly into Iowa and have personally profited from Pigeonly's connections to the state. Given those allegations, I find that Ashburn has established that this court has personal jurisdiction over the Pigeonly executives.

## IV. CONCLUSION

For the reasons set forth herein:

1. The motion (Doc. 14) to dismiss filed by defendants Beth Skinner, Don Harris, Michael Boatman and Jacy Barker is **granted**. Counts 7 and 8 of plaintiff Jerry Ashburn's second amended complaint (Doc. 27) are **dismissed without prejudice** for failure to exhaust administrative remedies.

2. The motion (Doc. 29) to dismiss filed by defendants Frederick Hutson and Alfonzo Brooks is **denied**.

3. Ashburn's motion (Doc. 35) to strike Doc. 34-1 is **denied**.

16

**IT IS SO ORDERED** this 23rd day of January, 2026.

_____
Leonard T. Strand
United States District Judge